THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-CV-500-FL

| | |
|---|---|
| SUSAN G. YUREK, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Susan G. Yurek ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant filed an application for DIB payments on 7 March 2006, alleging disability beginning 5 September 2005. (R. 101-12, 124). Her claim was denied initially and upon reconsideration. (R. 55-63, 65-73). A hearing before the Administrative Law Judge ("ALJ") was held on 8 March 2007, at which Claimant was represented by counsel and a vocational

expert ("VE") appeared and testified. (R. #). On 22 March 2007, the ALJ issued a decision denying Claimant's request for benefits. (R. 5-19). On 29 July 2008, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of the treating physician's opinion; (2) failure to acknowledge and explain weight accorded to the opinions of State Agency non-examining and consulting physicians; (3) improper assessment of Claimant's residual functional capacity ("RFC"); (4) failure to resolve conflicts between the VE's

3

testimony and the Dictionary of Occupational Titles ("DOT"); and (5) failure to evaluate Claimant's obesity in accordance with Social Security Ruling ("S.S.R.") 02-1p. *See* Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 1-2. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 11). Next, the ALJ determined Claimant had the following severe impairments: (1) obesity; (2) diabetes mellitus; (3) sleep apnea; (4) fibromyalgia; (5) irritable bowel syndrome ("IBS"); (6) depression; (7) arthropathy; and (8) fatty liver. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12). In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found Claimant's "depressive disorder causes . . . mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. There is no evidence [of] any episodes of decompensation, and the evidence does not establish the presence of "C" criteria." (R. 13).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] that was simple, routine and repetitive. (R. 14). In

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other

4

making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 16). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as an accountant and accounting clerk. (R. 18). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 43 years old and unemployed. (R. 25-26). Claimant has an associate degree in accounting. (R. 26). Claimant was last employed with Account Temps in a temporary capacity in 2005. (R. 26). Claimant's past work experience also includes work as an accounts receivable clerk and a staff accountant. (R. 29).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. Claimant testified that fibromyalgia pain and fatigue, particularly in her back, shoulders and neck, were her most severe impairments. (R. 32-33). As a result of pain, Claimant spends the majority of her day in a reclining position. (R. 33). Claimant suffers from confusion and memory problems as a result of "fibro fog." (R. 33). Claimant suffers also from type II diabetes for which she takes medication (R. 35), osteoarthritis in her knees and ankles (R. 35-36), bursitis in her right hip (R. 36), migraine headaches, which have been

---

sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

5

successfully treated with beta blockers until she developed fibromyalgia (R. 36), nonalcoholic fatty liver disease (R. 37), and abdominal pain, diarrhea and constipation. (R. 38).

Claimant has been treated for depression since 1998 and received counseling between June 2000 and June 2001. (R. 41-42). Claimant testified that her treating physician suggested mental health treatment and admitted that not pursuing this treatment has been "all [her] fault" and that she "should be going." (R. 43). Claimant's medications include Vicodin for pain, Meformin and Actose for diabetes (R. 40-41), Lexapro for depression (R. 42), and Trazodone and Ambien as sleep aids (R. 44). Claimant has considered both physical therapy and gastric bypass to improve her functioning. (R 44). However, a physical therapist advised against therapy due to Claimant's leg pain and Claimant must lose a certain percentage of weight before her insurance company will approve the surgery. (R. 44-45).

As for daily activities, Claimant cares for her nephew over whom she has custody, but relies on her husband for assistance. (R. 25, 34). Claimant performs no household chores and drives approximately once a month. (R. 38-39). Claimant testified to having no current hobbies, explaining she stopped cross-stitching and attending church approximately one year prior to the hearing. (R. 40).

### III. Vocational Expert's Testimony at the Administrative Hearing

Luther D. Pearsall, Ph.D., testified as a VE at the administrative hearing. (R. 46-49, 90-93). After the VE's testimony regarding Claimant's past work experience, the ALJ posed the following hypothetical:

> Assum[e] an individual age 43 with at least a high school education, past relevant work experience as described for the claimant . . . the exertional capacity for sedentary work; no more than occasional stooping, crouching, kneeling, crawling;

6

and limited to simple, routine, repetitive tasks, would there be occupations that such an individual could perform?

(R. 47). The VE responded the individual could perform the following unskilled, sedentary positions with a specific vocational preparation ("SVP") time of two and provided DOT classification citations along with the number of jobs available in the local and national economies: (1) surveillance monitor - DOT 379.367-010, 1,800 locally, 70,000 nationally; (2) weigher or weight tester - DOT 539.485-010, 1,000 locally, 28,000 nationally; and (3) telephone quotation clerk - DOT 237.367-046, 1,500 locally, 45,000 nationally. (R. 48). The VE testified further that all positions at all exertion and skills levels would be eliminated if the individual was incapable of sustaining simple, routine, repetitive tasks on a regular basis. *Id.* The VE testified that his testimony was consistent with the DOT. *Id.*

## DISCUSSION

### I. The ALJ did not err in evaluating the opinion of Claimant's treating physician.

Claimant contends the ALJ misapplied the treating physician rule to the opinion of Claimant's treating physician, Robert C. Pennington, M.D. *See* Pl.'s Mem. at 9-11. Specifically, Claimant argues that the ALJ failed to apply the factors set forth in 20 C.F.R. § 404.1527. This Court disagrees.

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam). The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant deference to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling

7

weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, No. 2:05cv00046, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006).

When the ALJ does not give the opinion of a treating physician controlling weight, he must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

8

The medical opinion at issue appeared in a questionnaire dated 11 May 2006, wherein Dr. Pennington's responses indicated Claimant is incapable of working for even one hour per day. (R. 16-17, 309-10). The ALJ acknowledged implicitly the length, frequency, nature and extent of Claimant's treatment relationship[2] with Dr. Pennington via multiple references to his treatment notes (R. 16-17, 195, 224, 228, 321, 356, 364, 366, 368, 391). However, the ALJ did not accord any significant weight to the May 2006 opinion because "Dr. Pennington did not provide any explanation nor set forth any medical basis for his opinion" (R. 16) and "the record . . . fails to support the severe limitations" cited therein. (R. 17). As observed by the ALJ, Dr. Pennington's records indicated that Claimant's "migraines had been fairly well-controlled, as had her obesity, fibromyalgia, diabetes mellitus, depression, and sleep apnea, all of which have recently been described as being stable."[3] (R. 17, 232, 236, 238, 321, 329, 331, 364, 366, 368, 391). Moreover, while Dr. Pennington stated that Claimant is incapable of any sitting or lifting in a workday and can only stand for a total of sixty minutes in a workday (R. 309), the ALJ noted Claimant "has . . . been able to take care of her young nephew, which would seem to be a fairly challenging job for someone who is allegedly disabled." (R. 17). Finally, as the ALJ acknowledged, despite her impairments, Dr. Pennington recommended that Claimant exercise. (R. 16, 224, 228).

---

[2] Contrary to Claimant's assertion, the ALJ is not required to set forth expressly "a factor-by-factor analysis of each of the considerations listed above in every ruling that bears on the weight given to a medical opinion." *Warren v. Astrue*, No. 5:08-CV-149-FL, 2009 U.S. Dist. LEXIS 41852, at *7-8, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009) (addressing factors an ALJ must consider in determining weight of a physician's medical opinion if not according it controlling weight).

[3] While the ALJ failed to discuss the stability of Claimant's hypertension, the Court notes that the same evidence documenting the stability of Claimant's other impairments documents also the stability of Claimant's hypertension. *See* (R. 236, 331, 368, 391).

The absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of Dr. Smith's opinion. Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Smith's opinion and the reasons for said weight. *See Koonce v. Apfel*, No. 98-1144, 166 F.3d 1209, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Pennington's opinion.

## II. The ALJ's failure to address all opinions provided by State agency physicians is harmless error.

Claimant contends the ALJ's failure to discuss explicitly the opinions of all State agency physicians is reversible error. *See* Pl.'s Mem. at 11-13. In particular, Claimant faults the ALJ for failing to discuss the opinions of non-examining consultant Frank Virgili, M.D., and examining consultant Anthony Laspina, Ph.D., and for failing to assign a weight to the opinions of non-examining consultants Frances Breslin, Ph.D., and Buffie Mosby, SDM/CC. This Court disagrees.

According to applicable regulations, an ALJ "must consider findings of State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(i). The same rule provides, however, that "[ALJs] are not bound by any findings made by State agency . . .

consultants . . . ." *Id.* To the extent that the ALJ's failure to consider opinions or findings of fact made by State agency consultants may constitute error, however, the Court finds any error to be harmless.

At the outset, the Court dispenses with Claimant's contentions regarding Dr. Breslin and Ms. Moby, as the language of the decision itself clearly reflects the weight the ALJ accorded to the opinions of these state agency consultants. (R. 13, 17). The ALJ's findings regarding the severity of Claimant's mental impairment are identical to those of Dr. Breslin; thus, it is clear that the ALJ accorded significant weight to Dr. Breslin's opinion.[4] (R. 13, 16, 294, 301). As for Ms. Moby's finding that Claimant is capable of performing medium work, the ALJ stated "Ms. Mosby's [RFC] is not adopted as it fails to take into consideration the claimant's conditions and limitation arising therefrom." (R. 17). In fact, the ALJ limited Claimant to sedentary work, implying no weight was accorded to Ms. Mosby's opinion. (R. 14).

---

[4] Claimant notes that in Section I-Summary Conclusions of the mental RFC form, Dr. Breslin indicated Claimant is moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *See* Pl.'s Mem. at 12 (citing R. 306). Plaintiff hypothesizes that "[i]f such limitations would result in more than two to three unscheduled absences from the workplace per month, then most competitive employment would be ruled out." *Id.* Per the SSA's Program Operations Manual System ("POMS"), a consultant's mental RFC opinion is not set forth in Section I of the mental RFC form - which contains a series of checkboxes intended as a worksheet - but rather in Section III, titled "Functional Capacity Assessment." *See* POMS § DI 24510.060(B)(2)(a) & (4)(a), available at https://s044a90.ssa.gov/apps10/ ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. Section III - Functional Capacity Assessment, is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.") (boldface omitted). In this case, Dr. Breslin, upon completion of Section I of the mental RFC form, found Claimant capable of completing simple, repetitive and routine tasks - a limitation adopted by the ALJ. (R. 14, 16, 307). Accordingly, there is no support for extending Dr. Breslin's opinion as Claimant attempts to do.

11

Claimant points out correctly that the ALJ failed to mention the opinions of Dr. Virgili and Dr. Laspina; however, this failure is not fatal to the administrative conclusion given the evidence of record. Dr. Virgili found Claimant capable of performing medium work with limitations to occasional climbing, balancing and stooping and no exposure to hazards - limitations identical to those found by Ms. Mosby and discussed by the ALJ. (R. 312-13, 315, 347-48, 350). Dr. Laspina's conclusions, which include finding Claimant is capable of performing simple, repetitive work and relating with a supervisor, are identical to those of Dr. Breslin. (R. 287, 307). Moreover, in completing Claimant's mental RFC assessment, Dr. Breslin summarized Dr. Laspina's opinion (R. 308).

### III. The ALJ properly considered the cumulative effect of Claimant's impairments on her ability to work.

Claimant contends the ALJ failed to evaluate the cumulative effect of her impairments, including her obesity, migraine headaches, lower extremity edema and hypertension, on her ability to work.[5] *See* Pl.'s Mem. at 14-15. This Court disagrees.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant

---

[5] Claimant asserts also that the ALJ committed error by failing to make a specific severity finding with regard to all of her impairments at the second step of the sequential evaluation. However, the ALJ's failure to make an explicit finding is not reversible error where the ALJ finds, as he did here, that the claimant has a severe impairment or combination of impairments and considers the omitted impairments at later steps in the sequential evaluation. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 U.S. Dist. LEXIS 13893, at *6, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps). Accordingly, the Court will address Claimant's argument in this matter only as it relates to the ALJ's alleged failure to discuss these impairments and their functional limitations in his assessment of Claimant's RFC.

medical and other evidence in the case record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.").

Pursuant to S.S.R. 02-1p, the ALJ must consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from performing her past relevant work or other work in the national economy. S.S.R. 02-01p, 2000 WL 628049, at *3. When assessing a claimant's RFC, the ALJ is to consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* at *6.

In this case, the ALJ's treatment of Claimant's obesity comported fully with that regulatory ruling as to all steps[6] of the sequential evaluation process. In particular, the ALJ

---

[6] Claimant contends the ALJ failed to consider Claimant's obesity at step three of the sequential evaluation. *See* Pl.'s Mem. at 15 (noting "if obesity is of such a level that it results in an inability to ambulate effectively . . . it may substitute for the major dysfunction of a joint(s) due to any cause . . . with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence) (quoting S.S.R. 02-1p)). However, while not mentioning obesity directly, the ALJ discussed his consideration of Listing 1.02, noting

13

found Claimant's obesity, diabetes mellitus, sleep apnea, fibromyalgia, IBS, depression, arthropathy and fatty liver to be severe impairments but not severe enough to meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 11). Contrary to Claimant's argument, the ALJ proceeded to analyze the effects of these impairments, including obesity, migraine headaches, lower extremity edema and hypertension, upon Claimant's RFC. For example, the ALJ expressly referenced (1) his duty to take Claimant's obesity into account pursuant to S.S.R. 02-1p and in doing so, noted Claimant is capable of "perform[ing] work no more strenous than that found at the sedentary level of physical exertion" (R. 14); (2) Claimant's testimony that her migraines had been successfully treated with beta blockers until she developed fibromyalgia (R. 15); (3) Dr. Pennington's 16 June 2004 progress note indicating a follow-up for hypertension (R. 16, 195); Dr. Pennington's 30 November 2005 progress note indicating Claimant's headache cycle was better overall with Inderal LA (R. 16, 224); (4) Ms. Mosby's finding that Claimant needed to avoid concentrated exposure to work around hazards such as machinery and heights due to migraines (R. 17, 315); (5) Dr. Pennington's 26 June 2006 progress note indicating Claimant suffered from some pedal edema and the significant improvement of "edema on the left" (R. 17, 321); (6) Dr. Pennington's 26 October 2006 progress note indicating edema in both ankles and his impression that Claimant had osteoarthritis in the right ankle and knee (R. 17, 356); and (7) numerous progress notes by Dr. Pennington indicating Claimant's obesity and hypertension were "stable" (R. 17, 232, 236, 238, 321, 331, 364, 366, 368, 391). The ALJ noted further Dr. Pennington's numerous recommendations urging Claimant

---

Claimant "does not have major dysfunction of a joint . . . resulting in [an] inability to ambulate effectively" and Claimant presents no evidence to the contrary. (R. 12). Also, within his step three analysis, the ALJ noted that "[t]here is no longer a listing level impairment for obesity - although this condition ha been taken into account in formulating the claimant's [RFC]." *Id.*

14

to exercise and lose weight. (R. 16-17, 228, 332, 391). Finally, the ALJ noted Claimant's ability to care for her young nephew. (R. 17).

In addition to medical evidence, the ALJ discussed non-medical evidence bearing upon Claimant's RFC. As the ALJ noted in his opinion, Claimant stated "fibromyalgia pain and fatigue . . . were her most severe problems." (R. 15, 32-33). The ALJ has a duty to evaluate the intensity and persistence of a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c). However, that duty does not extend to speculating as to the impact of those symptoms. Rather, the claimant has the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on her ability to work on a sustained basis. *See* 20 C.F.R. §§404.1512(c), 404.1545(a)(3); *see also Pass*, 65 F.3d at 1203. Yet, Claimant has failed to do more than suggest that the ALJ should have speculated as to what extent obesity,[7] migraine headaches, edema and hypertension may have impaired her ability to work. *See* Pl.'s Mem. at 14 (stating the ALJ "failed to account for limitations resulting from [migraines, edema and hypertension]" but providing no discussion or identification of these limitations). However, a claimant must "allege that an impairment creates a functional limitation or restriction, or for there to be record evidence of an impairment's functional limitations or restrictions, before an ALJ must discuss the

---

[7] As S.S.R. 02-1p makes clear, it is not the mere presence of an impairment such as obesity which determines disability, but rather the effect the impairment has on the ability of the claimant to function and perform work-related tasks:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. *We will evaluate each case based on the information in the case record.*

S.S.R. 02-01p, 2000 WL 628049, at *6 (emphasis added). In this case, there is sufficient information in the record to support the conclusion that Claimant's obesity did not affect her ability to perform such tasks.

15

impact of the impairment on the claimant's RFC." *Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 U.S. Dist. LEXIS 40154, at *9-10, 2009 WL 1346241, at *3 (E.D.N.C. May 12, 2009) (citing 20 C.F.R. § 404.1512(c) and *Wimberly v. Barnhart*, 128 Fed. Appx. 861, 863 (3d Cir. 2005) ("The duty to evaluate a claimant's symptoms imposed by 20 C.F.R. 404.1529(c) does not extend to guessing what the impact of those symptoms may be. Rather, 20 C.F.R. 404.1512(c) and 20 C.F.R. 404.1545(a)(3) explicitly impose on the claimant the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on the claimant's ability to work on a sustained basis.")).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

### IV.     The ALJ failed to resolve the conflict between the VE's testimony and the DOT.

Lastly, Claimant contends the ALJ failed resolve the conflict between the VE's testimony and the DOT as required in Social Security Ruling 00-4p. *See* Pl.'s Mem. at 14. The ALJ's RFC finding limited Claimant to jobs requiring only simple, repetitive and routine tasks. Claimant contends this limitation equates to a General Educational Development ("GED")[8] reasoning level

---

[8] "[GED] embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." U.S. Dept. of Labor, DOT, App. C § III, 1991 WL 688702 (Fourth Ed. Rev. 1991). The DOT specifies the GED requirements required for each job, including the level of reasoning skills. Reasoning level one requires the worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* Reasoning level two requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* Reasoning level three requires the worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral,

16

of 1 or 2; and therefore conflict the jobs identified by the VE, which require a reasoning level of 3. *Id.* Accordingly, Claimant argues the ALJ was required to elicit a reasonable explanation for this conflict before relying on the VE's testimony. For the reasons set forth below, this Court finds Claimant's argument persuasive.

Defendant counters that in determining whether a claimant can perform a job, the required skill level is the relevant issue - that is, whether the job has a specific vocational preparation ("SVP") time of unskilled, semi-skilled or skilled. Def.'s Mot. for J. on the Pleadings at 26 ("Def.'s Mem."). Equating unskilled work to performing understanding, carrying out and remembering only simple instructions, Defendant avers no conflict exists between the VE's testimony and the DOT. *Id.* (citing S.S.R. 85-15, 1985 WL 56857, at *4 (mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions); *accord* S.S.R. 96-9p, 1996 WL 374185, at *9 (mental activities required by unskilled work include understanding, remembering, and carrying out simple instructions and making simple work-related decisions). Finally, citing S.S.R. 00-4p, Defendant implies that where the general educational requirements seem to exceed the requirements of unskilled work, it is the regulatory framework, in particular the SVP level, which controls.

Contrary to Defendant's argument, however, several courts have found that the DOT's reasoning level does in fact pertain to the work requirements of a job and is relevant where an ALJ limits a claimant to performance of a simple tasks. *See generally Leonard v. Astrue*, 487 F. Supp. 2d 1333, 1341 (M.D. Fla. 2007) (collecting cases). Further, courts have ordered remand based upon an ALJ's failure to obtain an explanation from the VE regarding an apparent conflict

---

or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

17

between the VE's testimony that a claimant could perform a job that the DOT classified as a reasoning level two or three when the ALJ limited the claimant to performing simple and repetitive tasks. *See id.* This Court has held that the RFC to perform simple, routine and repetitive tasks is consistent with a reasoning level of two. *See Burnette v. Astrue*, No. 2:08-CV-009-FL, 2009 U.S. Dist. LEXIS 24656, at *17, 2009 WL 863372, at *5 (E.D.N.C. Mar. 24, 2009) (holding that an "ALJ's limitation of [claimant] to 'simple routine repetitive tasks' is not inconsistent with jobs at the DOT reasoning development level 2");[9] *see generally Charles v. Astrue*, No. 07-1172, 2008 U.S. Dist. LEXIS 68597, at *12, 2008 WL 4003651, at *4 (W.D. La. Aug. 7, 2008) (collecting cases holding reasoning level 2 is consistent with an RFC to perform simple, routine tasks). However, this Court has not had occasion to consider whether such an RFC is inconsistent with a reasoning level of three and thereby requiring the ALJ to elicit an explanation from the VE.

After careful consideration of the parties' arguments and caselaw, this Court finds that the DOT's reasoning level three requirement conflicts with the ALJ's prescribed limitation that Claimant could perform only simple, routine, repetitive work.[10] *See Estrada v. Barnhart*, 417 F.

---

[9] Claimant cites *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 U.S. Dist. LEXIS 13893, 2009 WL 455414 (E.D.N.C. Feb. 23, 2009) in support of her assertion that numerous courts have found a limitation to simple, routine, repetitive tasks is inconsistent with a reasoning level of 3. *See* Pl.'s Mem. at 15. However, as Defendant notes, Claimant's reliance on *Jones* is misplaced. *See* Def.'s Mem. at 25. In *Jones*, the memorandum and recommendation ("M&R") submitted to the district court explicitly did not make a finding as to whether a limitation to simple tasks is consistent with a reasoning level of 3. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2008 U.S. Dist. LEXIS 108621, at *51-52, 2009 WL 455414, at *23 (E.D.N.C. Sept. 2, 2008). In adopting the M&R, the district court's analysis did not address this issue as no objection concerning this issue was made. *See Jones*, 2009 U.S. Dist. LEXIS 13893, at *3-4, 2009 WL 455414, at *1.

[10] This Court is aware of only two cases holding that a limitation to simple work is not inconsistent with a reasoning level of three. *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007); *Hillier v. SSA*, 486 F.3d 359, 367 (8th Cir. 2007). However, the Court finds the reasoning employed

Supp. 2d 1299, 1303-04 (M.D. Fla. 2006) (finding that jobs requiring reasoning level of 3 exceeded claimant's limitation to simple interactions and tasks); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (remanding to ALJ under S.S.R. 00-4p, when apparent conflict between VE's assessment that claimant limited to simple and repetitive tasks could perform certain jobs that DOT classified as reasoning level three); *Carter v. Barnhart*, No. 05-38-B-W, 2005 U.S. Dist. LEXIS 30501, 2005 WL 3263936 (D. Me. 2005) (remanding because the ALJ's limitation to simple repetitive tasks and DOT's assigned reasoning level of three at least required the ALJ to question the VE about the discrepancy). Because the ALJ failed to question the VE about the inconsistency before relying on the VE's testimony, the Court finds the ALJ erred. *Cf. Hare v. Astrue*, No. 7:08-CV-36-FL, 2009 U.S. Dist. LEXIS 24236, at *33, 2009 WL 873993, at *8 (E.D.N.C. Mar. 24, 2009) (noting VE testified as to the apparent conflict between the limitation to "simple one, two step tasks" and the jobs identified by the VE which have a reasoning level of three). Following S.S.R. 00-4p and the above-cited cases, remand to the ALJ is appropriate to address this apparent unresolved conflict between the jobs identified by the VE and the DOT's classification of these jobs.

---

unpersuasive. In *Renfrow*, the court found that a limitation to not performing "complex technical work" was consistent with jobs requiring reasoning levels of 2 and 3 because "the jobs in question are both classified as unskilled and so do not appear to be 'complex.'" *Renfrow*, 496 F.3d at 921. However, whether a job is complex is an issue for the VE to decide - not the court. In *Hillier*, the court concluded the VE's opinion that the claimant who was limited to following "simple, concrete instructions" could work as cashier was not inconsistent with the DOT's reasoning level three, based on claimant's prior work history and absence of any subsequent mental deterioration. Accordingly, the court's ruling was limited seemingly to the particular facts of that case. In this case, despite Claimant's past work history as an accountant, the ALJ found Claimant incapable of performing such work given her limitation to performing only simple tasks. (R. 18).

19

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 28th day of July, 2009.

Robert B. Jones, Jr.
United States Magistrate Judge